UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )( | |
| )( | Criminal No. 22-350 (JEB) |
| v. )( | Chief Judge Boasberg |
| )( | Plea Hearing: July 6, 2023[1] |
| JUSTIN DEE ADAMS )( | |

MOTION TO LIFT PREVENTIVE DETENTION
AND POINTS AND AUTHORITY IN SUPPORT THEREOF

COMES NOW the defendant, Justin Dee Adams, by and through undersigned counsel, and respectfully moves this Honorable Court to lift his preventive detention in this case. In support of this motion, Mr. Adams would show:

1.  On October 7, 2022, Justin Adams was charged by complaint in this case with Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. § 111(a)(1) and related charges in connection with the events at the U.S. Capitol on January 6, 2021. Criminal Complaint (ECF #1 in case 22-mj-219 (ZMF)).

2.  The evidence in this case consists largely of footage from body-worn cameras that police officers who were at the Capitol on January 6 were wearing. The footage shows a person who the government claims is Mr. Adams outside the Capitol. The footage shows that this person was involved in two incidents with the police. In one incident, the person slowly walks towards police officers who have lined up behind a fence of bicycle racks with his head down and his hands up. As this person gets up to the line, an officer standing outside the fence and to the person's right shoves him back, and in reaction, the person lunges at the officer and a brief struggle ensues. In the other incident, the person throws a plastic bottle towards an officer after seemingly getting squirted with chemical spray. There are no indications that the officers involved in these incidents were

---

[1] While a plea hearing was just scheduled in this case for July 6, 2023, Mr. Adams is currently being detained in a correctional facility in Utah. It may not be possible to get him writted into this jurisdiction from Utah if he remains detained in this case.

injured in any way. There is no evidence that the person depicted in the above-referenced footage ever entered the Capitol. Indeed, after the incident with the plastic bottle, the person appears to have left the Capitol grounds.

3. On October 19, 2022, in connection with the above-referenced complaint, federal agents went to arrest Mr. Adams at his home in Utah. It was alleged that, while the agents were arresting Mr. Adams, he assaulted one of them.

4. On October 18, 2022, the day before Mr. Adams was arrested, the government filed a detention memorandum in this case in the United States District Court for the District of Utah. (Detention Memorandum, ECF #2 in case no. 22-mj-707 (JCB)). In that memorandum, the government indicated that it would not be seeking to have Mr. Adams preventively detained in this case. Detention Memorandum at 1.

5. On October 19, 2022, after he was arrested, Mr. Adams appeared for an initial hearing in this case before a magistrate judge in the United States District Court for the District of Utah. At that hearing, despite the fact that it had initially indicated that it would not be seeking to have Mr. Adams preventively detained, the government did in fact request that Mr. Adams be preventively detained. Undoubtedly, the government changed its mind about asking for Mr. Adams' preventive detention because of the allegation that Mr. Adams has assaulted one of the agents while he was being arrested. The magistrate judge ordered that Mr. Adams be temporarily detained and set the case down for detention hearing for October 28, 2022.

6. On October 20, 2022, Mr. Adams appeared for an initial hearing in case 22-mj-736 (JCB) in the United States District Court for the District of Utah. The day before this hearing, Mr. Adams had been charged by complaint in the case with Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. § 111(a). Complaint (ECF #1). The charge pertained to what had allegedly happened when the federal agents were arresting Mr. Adams at his home. At the hearing, the magistrate judge ordered that Mr.

Adams be temporarily detained, and set the case down for a detention hearing for October 28, 2022, the same day as Mr. Adams' detention hearing in this case.

7. On October 26, 2022, Mr. Adams was indicted in case 22-cr-419 (DBB) in the United States District Court for the District of Utah on one count of Assaulting, Resisting, or Impeding a Federal Officer (18 U.S.C. § 111(a)). Indictment (ECF #1). The charge pertained to what had allegedly happened on October 19, 2022 when the federal agents were arresting Mr. Adams at his home.

8. On October 26, 2022, Mr. Adams was indicted in this case on five counts: 1) Civil Disorder (18 U.S.C. § 231(a)(3)); 2) Assaulting, Resisting, or Impeding a Federal Officer (18 U.S.C. § 111(a)(1)); Entering and Remaining in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(1)); 4) Disorderly or Disruptive Conduct in a Restrictive Building or Grounds (18 U.S.C. § 1752(a)(2)); and 5) Engaging in Physical Violence in a Restricted Building or Grounds (18 U.S.C. § 1752(a)(4)). Indictment (ECF #6).

9. On October 28, 2022, in the United States District Court for the District of Utah, Mr. Adams appeared for a detention hearing in this case and in his Utah case. Mr. Adams was ordered preventively detained in both cases. In the detention order, the magistrate judge focused on how Mr. Adams got into a "physical altercation" with federal officers when they came to his house on October 19, 2022 to arrest him in this case. Order of Detention Pending Trial at 2 (Detention Order, ECF #12 in case 22-mj-707 (JCB)). In his order, the magistrate judge indicated that he found by clear and convincing evidence that no conditions of release would reasonably assure that Mr. Adams did not pose a danger to other persons. Also, he indicated that he found by a preponderance of evidence that no conditions of release would reasonably assure Mr. Adams' appearance at future court proceedings. Detention Order at 3. While the magistrate judge did discuss his reasons for making the former finding, he did not discuss his reasons for making the latter one. See id. at 4. It should be noted that, given the nature of the charges against Mr.

Adams in this case and his criminal history, no presumption of detention exists.  See 18 U.S.C. § 3142(e)(2) and (3).

10.     After he was ordered preventively detained in this case and his Utah case, Mr. Adams remained in Utah pending trial there.  While he was awaiting trial in Utah, he negotiated a plea agreement with the government in this case.

11.     On June 13, 2023, trial commenced in Mr. Adam's Utah case.  On June 15, 2023, Mr. Adams was acquitted on the sole count that had been charged in that case—that is, Assaulting, Resisting, or Impeding a Federal Officer under 18 U.S.C. § 111(a).  With Mr. Adams complete acquittal in his Utah case, he is now only being held in this case.

12.     On November 10, 2022, Mr. Adams appeared remotely in this case for an arraignment.  For the hearing, the Pretrial Services Agency prepared a report for Mr. Adams.  (PSA Report, ECF #9).

13.     Mr. Adams is 49 years old.  He is married, and he and his wife have two children, ages 7 and 10.  Mr. Adams also has an adult son from a previous relationship who also lives in the household.  Mr. Adams was born and raised in northern Utah, in the Salt Lake City area.  After he graduated high school, he enlisted in the United States Army, where he served for four years.  In 1995, he was honorably discharged from the Army.  Apart from his time in the Army, Mr. Adams has lived his entire life in Northern Utah.  After leaving the Army, Mr. Adams pursued a career in the Information Technologies field.  His most recent IT job was working as an Assistant Manager for Curve Dental, Inc.  Curve Dental is a software company that provides practice-management software and related services for dental offices across the country.  Mr. Adams started working for Curve Dental in 2012.  Prior to Curve Dental, Mr. Adams worked as an Account Manager for Apex EDI, Inc., which provides insurance-claim processing software and services for a wide assortment of dental and medical practices.  Mr. Adams started work for Apex EDI in 2006.  Mr. Adams had other IT-related jobs prior to the ones just mentioned.  Up until recently, apart from some time he spent recovering from a serious motorcycle accident 25

years ago, see infra ¶ 15, Mr. Adams has been gainfully employed ever since graduating high school.

      14.     In addition to his career and his family, Mr. Adams has also pursued volunteerism, mentoring disadvantaged children and teenagers, and working with teenagers caught up in the juvenile-justice system. For eleven years, Mr. Adams has been a volunteer Big Brother for Big Brothers Big Sisters of America. He has also been a volunteer mentor for Christmas Box House, a locally (Utah) based non-profit organization providing services to abused and neglected children and teenagers. Realizing that working with children, especially teenagers, was something he was good at and found rewarding, Mr. Adams even contemplated changing careers. In 2013, Mr. Adams enrolled in classes at Salt Lake City Community College, earning an Associate's Degree in Sociology in 2015. During this time, Mr. Adams also took an internship at Draper Youth Ranch, a residential treatment facility for troubled teenage boys caught up in the juvenile-justice system.

      15.     Approximately 25 years ago, Mr. Adams was involved in a very serious motorcycle accident where he suffered significant brain trauma. After the accident, he had to learn to talk and walk again. Eventually, Mr. Adams was able to resume normal functioning, and for a long while, it was believed that he had largely recovered from the accident. However, about four years ago, Mr. Adams began having grand mal seizures. With the onset of the seizures, Mr. Adams began receiving treatment at the Veterans Administration Hospital in Salt Lake City. Doctors at the V.A. Hospital believe that Mr. Adams' seizures are related to the brain injury that he suffered in the motorcycle crash 25 years ago. Also, around this same time, Mr. Adams began suffering from bouts of severe depression. These bouts of depression are also believed to be related to the brain injury that Mr. Adams suffered in the motorcycle crash. After Mr. Adams began having the grand mal seizures, it became difficult for him to work, and he had to give up his career in the I.T. field in which he had been employed most of his life. After this, to generate some

income, Mr. Adams, who has always been good with his hands, began a small in-home business manufacturing custom plastic holsters.

16.   Mr. Adams has a minimal criminal history.  After January 6, 2021 but before his arrest in this case, Mr. Adams was arrested on a charge of Disorderly Conduct.  He subsequently pled guilty to that charge and was placed on 12 months unsupervised probation.  See PSA Report at 4-5.  Prior to this, Mr. Adams only other involvement in the legal system goes back to 2003, when Mr. Adams was convicted on a number of traffic offenses that appear to relate to him improperly using a license plate and towing a vehicle that was not properly registered.  See id. at 5.

17.   Where a magistrate judge has ordered a person to be held without bond pending trial, "the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b).

18.   Conditions or release can be fashioned in this case that will reasonably assure the appearance of Mr. Adams as required and the safety of other persons and the community.  Accordingly, Mr. Adams' preventive detention should be lifted.

## DISCUSSION

In order to hold a person without bond pending trial, a judicial officer must find that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  In order to hold a person on dangerous grounds, the requisite finding must be "supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2).  In order to hold a person on risk-of-flight grounds, the requisite finding must only be supported "by a preponderance of the evidence." United States v. Vortis, 785 F.2d 327, 329 (D.C. Cir. 1986).  When deciding whether or not to detain a person pending trial, a judicial officer is to look at 1) the "nature and circumstances of the offense[s] charged," 2) "the weight of the evidence against the person," 3) "the history and characteristics of the person," and 4) "the

nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).  Consideration of these factors compels a finding that Mr. Adams should be released on conditions.

At this point, it must be emphasized that the reason Mr. Adams was even preventively detained in this case in the first place appears to be because, when the federal agents came to arrest him, he allegedly assaulted one of them.  Just prior to his arrest, the government had submitted a detention memorandum in which it indicated that it would not be seeking Mr. Adams' preventive detention.  The government only changed its mind about seeking preventive detention for Mr. Adams after learning about what allegedly happened during his arrest.  Moreover, what allegedly happened during Mr. Adams' arrest played a key role in the magistrate judge's decision to detain Mr. Adams in this case.  Now that Mr. Adams has been acquitted at trial of assaulting the agent during his arrest, the magistrate judge's decision to preventively detain Mr. Adams, while perhaps understandable at the time, seems very much open to question now.

### Nature and Circumstance of the Offenses and Weight of the Evidence

Admittedly, the video evidence in this case appears to be strong.  Nevertheless, it is important to note that Mr. Adams' alleged conduct does not appear to have caused anyone any injury and that he never actually entered the Capitol building.  Moreover, in connection with the charged offense of Assaulting, Resisting, or Impeding a Federal Officer (18 U.S.C. § 111(a)(1)), Mr. Adams' alleged conduct appears to have been reactive and without any premeditation.

### The History and Characteristics of Mr. Adams

Consideration of his history and characteristics of Mr. Adams militate strongly in favor of his release.  Mr. Adams has been a productive and contributing member of society

all his life.  He is a family man with a wife and three children.  He served his country in the United States Army for four years, and after his service, he had a long career in the I.T. field.  Moreover, Mr. Adams has a long history of volunteerism and working with disadvantaged and troubled children and teenagers.  Also, Mr. Adams has a minimal criminal history, and there are no indications that he has ever failed to appear for any court proceedings.  He has lifelong ties to the community in which he lives, and his wife and children are there.

### The Danger Posed by Mr. Adams' Release

If the Court sees fit to release Mr. Adams, he will go back to live with his wife and three children in their home in northern Utah.  Mr. Adams will consent to GPS location monitoring and travel restrictions.  He will resume his treatment at the V.A. Hospital for his seizures and depression.  He will also get treatment for any anger-management issues he might have.  Such treatment can also be provided through the V.A.  Given all this, it is submitted that conditions of release can be fashioned that will reasonably assure the safety of persons in the community.  Mr. Adams has been a good family man and contributing member of society all his life.  He deserves a chance at release and an opportunity to show the Court that he can comply with release conditions.

### Conclusion

Consideration of the above factors shows that conditions of release can be fashioned that will assure Mr. Adams's appearance at future court proceedings and the safety of the community if he is released.  Accordingly, it cannot be found that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  For these reasons, Mr. Adams' preventive detention is not warranted.

WHEREFORE, the defendant, Justin Dee Adams, moves this Honorable Court to vacate the order of preventive detention in this case and release him on whatever conditions the Court sees fit to impose.

Respectfully submitted,

_____/s/_____
Jerry Ray Smith, Jr.
D.C. Bar No. 448699
Counsel for Justin Adams
717 D Street, N.W.
Suite 310
Washington, DC 20004
E-mail: jerryraysmith@verizon.net
Phone: (202) 347-6101